IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

ANTHONY HERRINGTON,           )
                              )
              Petitioner,     )
                              )
      v.                      )          CV 120-052
                              )
TIMOTHY WARD, Commissioner,[1] )
                              )
              Respondent.     )
_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at Wheeler Correctional Facility in Alamo, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.      BACKGROUND

This case challenges the validity of Petitioner's conviction for felony murder based on aggravated assault as determined by a jury in Burke County, Georgia, after a trial conducted from October 27 through October 30, 2008. Herrington v. State, 794 S.E.2d 145, 147 n.1 (Ga. 2016). The jury acquitted Petitioner on charges of malice murder and possession of a firearm

---

[1]As explained in the Court's prior order, (doc. no. 2), and consistent with Answer-Response, the proper Respondent is Timothy Ward, Commissioner, (doc. no. 5). Accordingly, the Court **DIRECTS** the Clerk to **TERMINATE** Warden Vance Laughlin as a Respondent.

during the commission of a crime.  Id.; (see also doc. no. 6-5, p. 145).  A charge of possession of a firearm by a convicted felon, which had been severed for trial, was dismissed by an order of *nolle prosequi*.  Herrington, 794 S.E.2d at 147 n.1; (see also doc. no. 6-5, p. 146).  The trial court sentenced Petitioner to life in prison for felony murder.  Herrington, 794 S.E.2d at 147 n.1; (see also doc. no. 6-5, p. 146).  Retained attorney Peter Johnson represented Petitioner at trial.  (Doc. no. 6-5, pp. 59, 146.)

Appointed attorney Russel R. Jones represented Petitioner on appeal and raised four enumerations of error:

(1)     The evidence was insufficient to support the felony murder conviction; and

(2)     In the alternative, the felony murder conviction should be reversed because the trial court erred in instructing the jury on the elements of aggravated assault; and

(3)     In the alternative, the felony murder conviction should be reversed because the trial court erred in denying the defense motion for a mistrial; and

(4)     In the alternative, the felony murder conviction should be reversed because trial counsel provided ineffective assistance by moving for a mistrial during voir dire.

(Doc. no. 6-10, pp. 118-25; doc. no. 6-11, pp. 3-25.)  The Georgia Supreme Court rejected all of Petitioner's arguments and affirmed the judgment of conviction.  Herrington, 794 S.E.2d at 150.

In its opinion, the Supreme Court provided the following description of facts about the murder based on the evidence offered against Petitioner at trial:

. . . In 2006, [Curtis] Howard began supplying large quantities of cocaine on a weekly basis to Michael Thomas and Michael Fields, two drug dealers in

2

Waynesboro, Georgia.  On August 24, 2006, Howard drove in his truck to Waynesboro, checked into a hotel, and then drove to Fields's house, picking up Thomas along the way.  When they arrived at the house, Thomas called Fields and told him that they were there.  Shortly thereafter, [Petitioner] and Michael Jones, who was armed with a rifle, ran up to either side of the truck, and Howard and Thomas were ordered at gunpoint to get out and get onto the ground. [Petitioner] pulled Thomas's shirt over his head so he could not see.  One of the assailants demanded to know where the drugs were, and Howard said that the drugs were back at his hotel.  As Howard begged for his life, Jones shot him once in the chest and once in the abdomen, killing him.

Howard weighed about 500 pounds, and [Petitioner], Thomas, and Fields had to work together to load his body into the bed of his truck.  [Petitioner] used a shovel to cover with fresh dirt the bloody ground where Howard lay after being shot, while Jones, Thomas, and Fields left to dispose of Howard's body and truck.  The next day, Howard's body was found in the bed of his truck, which was parked behind a vacant mobile home in a neighboring county.  The police later found two kilograms of cocaine in a compartment behind the back seat.

At trial, Thomas and Fields testified for the State.  Thomas said that [Petitioner] also had a gun when he ran up to the truck, but no other evidence corroborated that point.  [Petitioner] testified that he was coming around the corner of the house when he heard the shots, and he denied any involvement in Howard's death.  [Petitioner] claimed that he helped load Howard's body into the truck only because Fields's children were about to get home from school.

Id. at 148.

Petitioner next filed a *pro se* state habeas corpus petition on June 5, 2017, in Wheeler County, and twice amended his petition.  Petitioner raised the following claims in his state habeas proceedings:

(1)     Trial counsel provided ineffective assistance by failing to request a motion for mistrial during voir dire; and

(2)     The indictment failed to charge a predicate offense for the felony murder of which Petitioner was convicted; and

(3)     Petitioner was denied his Sixth Amendment right to cross examine witnesses concerning the evidence and testimony of Georgia Bureau of Investigation (GBI) Special Agent (SA) Doug Parker; and

(4)     Trial counsel provided ineffective assistance by failing to timely file a list of witnesses with the trial court; and

(5)     Trial counsel provided ineffective assistance by failing to impeach State witness Cherika Wright regarding conflicting statements or failing to hold Ms. Wright for rebuttal; and

(6)     Appellate counsel provided ineffective assistance by failing to raise the preceding five issues presented in the state habeas petition; and

(7)     Trial counsel provided ineffective assistance by failing to impeach State witness Michael Fields; and

(8)     Trial counsel provided ineffective assistance by failing to properly advise Petitioner of the consequences of taking a plea deal; and

(9)     Appellate counsel provided ineffective assistance by failing to raise the issue regarding advice about the consequences of taking a plea deal.

(Doc. nos. 6-1, 6-2.)  The state habeas court conducted evidentiary hearings on April 9 and November 27, 2018, (doc. no. 6-4, p. 1; doc. no. 6-5, p. 1), and denied relief in a Final Order filed on April 15, 2019, (doc. no. 6-2).  The Georgia Supreme Court denied a certificate of probable cause to appeal (CPC) without comment.  (Doc. no. 6-3, Herrington v. Laughlin, No. S19H1205 (Ga. Dec. 23, 2019).)

Petitioner then timely filed the above-captioned § 2254 *pro se* petition, raising the following claims for relief:

(1)     The evidence was insufficient to support Petitioner' felony murder conviction; and

(2)     The trial court gave an improper jury instruction on aggravated assault because the instruction did not follow the language in the indictment, which alleged aggravated assault was committed by shooting the victim; and

4

(3)     The trial court improperly denied Petitioner's motion for mistrial based on the State's voir dire questions concerning culpability for a party to a crime and whether prospective jurors had heard about the circumstances of the charged murder; and

(4)     Trial counsel provided ineffective assistance by moving for a mistrial during voir dire instead of using the procedurally correct "challenge to the poll" to seek a new jury panel; and

(5)     Appellate counsel provided ineffective assistance by failing to argue the indictment violated Petitioner's Fifth and Fourteenth Amendment rights because it did not identify a predicate offense for felony murder; and

(6)     Appellate counsel provided ineffective assistance by failing to argue Petitioner's Sixth Amendment right to cross examine witnesses had been violated with respect to evidence and testimony of GBI SA Doug Parker; and

(7)     Appellate counsel provided ineffective assistance by failing to raise an ineffective assistance of trial counsel claim based on the failure to file a timely witness list; and

(8)     Appellate counsel provided ineffective assistance by failing to raise an ineffective assistance of trial counsel claim based on the failure to impeach State witness Cherika Wright concerning her conflicting statements, or alternatively the failure to hold Ms. Wright for rebuttal.

(See doc. no. 1.)

Respondent argues federal relief should be denied on all claims either because the state court decisions deserve deference or because federal relief is not available for alleged violations of state law.  (See doc. nos. 5, 5-1.)

## II.     STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

5

respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014). Rather, the habeas petition must show the state court decision was

6

"objectively unreasonable."  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").  A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013).  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence."  Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.").  "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . .  Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016)

(citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.   DISCUSSION

**A.   This Court Defers to the Decision of the Georgia Supreme Court that the Evidence Adduced at Trial Was Sufficient to Authorize a Rational Trier of Fact to Find Petitioner Guilty of the Crime of Which He Was Convicted Beyond a Reasonable Doubt**

In Ground One, Petitioner argues the evidence at trial was insufficient to convince a

rational trier of fact beyond a reasonable doubt of Petitioner's guilt of felony murder.  (Doc.

no. 1, p. 5.)  When Petitioner raised this sufficiency of the evidence argument on direct appeal,

the Georgia Supreme Court summarized the evidence – as set forth in detail in Part I, *infra* –

and found the evidence sufficient to authorize a rational trier of fact to find Petitioner guilty

beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 307 (1979).  See Herrington,

794 S.E.2d at 148-49.  The Georgia Supreme Court also cited O.C.G.A. § 16-2-20(b) and

Flournoy v. State, 755 S.E. 2d 777 (Ga. 2014), in support of the propositions under Georgia

law that (1) a defendant need not personally possess a weapon or fire a shot to be guilty as a

party to an aggravated assault if the evidence shows the defendant intentionally aided or

abetted committing the crime; and, (2) determining whether a person was a party to a crime

can be inferred from presence, companionship, and conduct both before and after commission

of the crime.  Herrington, 794 S.E.2d at 148.

In Jackson, the Supreme Court held that the Fourteenth Amendment Due Process

Clause mandates no person shall be convicted unless the evidence is sufficient to convince the

trier of fact beyond a reasonable doubt of the existence of every element of the offense.  443

U.S. at 316.  Thus, the relevant question on review of a sufficiency of the evidence claim is whether "viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Id.</u> at 319.  The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).   "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  <u>Tharpe</u>, 834 F.3d at 1336.

Petitioner fails to show the state court's conclusion was an unreasonable application of <u>Jackson</u>.  On direct appeal, the appellate court has a duty to view the evidence in the light most favorable to the verdict.  <u>Jackson</u>, 443 U.S. at 319; <u>Barela v. State</u>, 517 S.E.2d 321, 323 (Ga. 1999) ("[T]he [appellate] Court does not weigh or evaluate the evidence for itself, nor does it resolve conflicts concerning the evidence.  Rather it examines the evidence in its entirety in a light most favorable to the verdict to determine whether any rational trier of fact could have found the accused guilty beyond a reasonable doubt.")  Moreover, as explained above, in these federal proceedings, factual determinations made by the state court are presumptively correct and must be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Without citation to any portion of the record, Petitioner makes the conclusory argument the evidence was insufficient to support his felony murder conviction.  As presented on direct appeal, Petitioner argued the evidence was insufficient to prove he committed aggravated assault with a deadly weapon - the predicate offense for the felony murder conviction - because the State failed to prove he possessed a firearm, as demonstrated by his acquittal on the charge

of possession of a firearm during the commission of a crime.  However, the record provides ample support for the jury verdict, and the related state court determination the evidence was sufficient for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt.

Michael Thomas, who pled guilty to aggravated assault of the murder victim, testified at trial that Petitioner and Michael Jones ran up to either side of the victim's truck and ordered the victim and Mr. Thomas at gunpoint out of the truck and onto the ground at the murder scene.  (Doc. no. 6-6, pp. 215-16.)[2]  Petitioner pulled Mr. Thomas's shirt over his head so he could not see, and Mr. Jones shot the victim when the victim said he did not have drugs with him.  (Id. at 216-17; doc. no. 6-7, p. 24.)  Mr. Thomas testified Petitioner had a gun when he ran up to the victim's truck, (doc. no. 6-6, p. 216; doc. no. 6-7, p. 24), although no other evidence corroborated that testimony.  Mr. Thomas also testified Petitioner helped load the victim's body into the back of the victim's truck and dug up fresh dirt in an attempt to cover the bloody ground where the victim bled after being shot.  (Doc. no. 6-6, pp. 239, 250.)

Michael Fields, who pled guilty to concealing a death and criminal intent to commit robbery, testified he never saw Petitioner with a firearm on the day of the murder.  (Doc. no. 6-7, pp. 111-12, 122.)  Petitioner also testified he did not have a gun on the day of the murder.  (Doc. no. 6-9, p. 61.)  Petitioner testified he had nothing to do with the victim's death, coming upon the crime scene only after he heard shots fired.  (Id. at 56.)  Petitioner further testified he helped load the victim's body into the truck because Mr. Fields's children were about to arrive home from school.  (Id. at 57-58, 60-61.)

---

[2]For ease of reference, the Court cites to the document and page numbers assigned by the Court's electronic filing system rather than any citations assigned in the state court proceedings.

Petitioner has not shown the state court was objectively unreasonable in its determination the evidence at trial was clearly sufficient for a jury to find guilt beyond a reasonable doubt.  At bottom, Petitioner complains the jury incorrectly evaluated the evidence concerning his possession of a firearm and the relevance of that determination to the guilty verdict for felony murder.  However, it was the province of the jury to determine the credibility of witnesses, weigh the evidence, and resolve any conflicts or inconsistencies.  See Vega v. State, 673 S.E.2d 223, 225 (Ga. 2009); see also Manuel v. State, 711 S.E.2d 676, 678 (Ga. 2011) (explaining testimony of one witness can establish a fact and lack of corroboration goes to weight of evidence and witness credibility, both issues within jury's purview).

Moreover, even as the jury found Petitioner did not possess a gun or shoot the victim, he could still be guilty as a party to felony murder because of the aggravated assault committed by the shooter.  See Flournoy, 755 S.E.2d at 782; see also State v. Jackson, 748 S.E.2d 902, 904 (Ga. 2013) ("A person who does not directly commit a crime may be convicted upon proof that the crime was committed and that a person was a party to it."); Teasley v. State, 704 S.E.2d 800, 801 (Ga. 2011) (explaining person who does not directly commit a crime may be convicted upon proof crime was committed and person was a party to the crime, which may be inferred from presence and conduct before and after commission of crime); Hines v. State, 578 S.E.2d 868, 872 (Ga. 2003) (explaining Georgia does not recognize inconsistent verdict rule, pretermitting challenge to guilty verdict on one count as inconsistent with jury finding of not guilty on different count).

The Georgia Supreme Court did not unreasonably apply Jackson. Petitioner's conclusory claim is woefully inadequate to establish that the state court unreasonably applied

<u>Jackson</u> or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented.  Indeed, Petitioner has not presented any evidence—much less clear and convincing evidence—to rebut the presumptive correctness of the Georgia Supreme Court's factual determinations.  Nor has he presented any legal support for his position concerning any impact of his acquittal on one charge with respect to his conviction on another.  The evidence at trial was sufficient for a jury to find guilt beyond a reasonable doubt.  Accordingly, Petitioner is not entitled to federal habeas relief in connection with his claim in Ground One.

### B.    Grounds Two and Three Allege Violations of State Law and Therefore Do Not Support a Claim for Federal Habeas Corpus Relief

Ground Two alleges the trial court gave an improper jury instruction on aggravated assault because the jury was not instructed based solely on the specific allegation in the indictment that shooting the victim was the act of aggravated assault.  Ground Three alleges the trial court improperly denied Petitioner's motion for mistrial based on the State's voir dire questions to prospective jurors about culpability for a party to a crime and whether they knew about the circumstances of the murder for which Petitioner was charged and eventually convicted.

A state court criminal judgment may be collaterally attacked in the federal courts only if it violated federal law.  <u>Wilson v. Corcoran</u>, 562 U.S. 1, 3 (2010).  As the habeas statute explains, the federal writ may issue to a state petitioner only when that petitioner "is in custody in violation of the Constitution or law or treaties of the United States."  28 U.S.C. § 2254(a).  "Because state courts are the ultimate expositors of state law, we are bound by state-court

determinations on state-law questions.  Put another way, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  Jones v. GDCP Warden, 815 F.3d 689, 722-23 (11th Cir. 2016) (internal citations and quotes omitted); see also Tuomi v. Sec'y, Fla. Dep't of Corr., -F.3d-, No. 17-14373, 2020 WL 6686696, at *5 n.9 (11th Cir. Nov. 13, 2020) (same, collecting cases).  In sum, the federal habeas court does not sit as a "'super' state supreme court."  Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (per curiam) (citations omitted).  As an alleged error of state law forms no basis for federal habeas corpus relief, neither Ground Two nor Three form a basis for relief in these proceedings.

Moreover, even if Ground Two raised a federal question properly exhausted in state court,[3] the claim does not afford Petitioner a basis for federal habeas corpus relief.[4]  "Where the claim is merely that a jury instruction was incorrect under state law, federal habeas relief is not available."  Applewhite v. Sec'y, DOC, 373 F. App'x 969, 972 (11th Cir. 2010) (per curiam).  However, for the sake of completeness, the Court recognizes, a defective jury charge can raise an issue of constitutional dimension "if it renders the entire trial fundamentally

---

[3] In his answer, Respondent specifically notes he does not waive exhaustion as to Ground Two, (doc. no. 5, p. 2), but then later also states he "does not contest exhaustion in this case," (id. at 4).  The Court need not sort out the seemingly contradictory assertions because, as explained herein, the claims are based on state law and in any event, do not allege any overarching prejudice or unfairness rising to the level of constitutional dimension.

[4] As discussed in detail in Part III(C)(2), infra, the Georgia Supreme Court addressed the substance of the argument raised in Ground Three and found no error by the trial court.  Herrington, 794 S.E.2d at 149-50.  Not only does the record support that determination, but this Court is bound by state court determinations on state-law questions.  See Jones, 815 F.3d at 722.

unfair." <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983) (*per curiam*). Petitioner has not argued, let alone shown, any such fundamental unfairness.

On direct appeal, Petitioner argued the jury instruction was incorrect because the indictment alleged the aggravated assault had been committed by shooting the victim, but the Court gave the pattern instruction for aggravated assault with a deadly weapon. <u>Herrington</u>, 794 S.E.2d at 149; (doc. 6-5, p. 56; doc. no. 6-9, p. 98). Petitioner does not allege he was indicted for some other type of aggravated assault or point to any evidence that could have caused confusion that the aggravated assaulted was committed in some way other than shooting the victim. Moreover, even if an overbroad instruction had been given for aggravated assault, any defect was cured because the trial court (1) read the indictment at the beginning of the instructions; (2) provided a copy of the indictment to jurors for their deliberations; and (3) instructed the State had the burden of proof beyond a reasonable doubt on every material allegation in the indictment and every essential element of the charged crime. (Doc. no. 6-9, pp. 81-83.) As the Georgia Supreme Court has summarized:

> Even where a jury instruction is defective in that the trial court instructs the jury that an offense could be committed by other statutory methods than the one method charged in the indictment . . . such a defect is cured where, as here, "the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt."

<u>Flournoy</u>, 755 S.E.2d at 782 (quoting <u>Williams v. Kelley</u>, 728 S.E.2d 666, 668 (Ga. 2012)). In sum, Petitioner has not shown the jury instruction rendered his entire trial fundamentally unfair, and even if the claim in Ground Two as raised were not based solely on state law, he is not entitled to federal habeas corpus relief.

14

**C.     Applying AEDPA Deference to the Ineffective Assistance Claims Rejected by the State Courts, Federal Habeas Relief Is Not Warranted**

**1.     Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691.  Indeed, "strategic choices are 'virtually unchallengeable.'" <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing <u>Strickland</u>, 466 U.S. at 690 and <u>Waters v. Thomas</u>, 46 F.3d 1506, 1522 (11th Cir. 1995) (*en banc*)).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. <u>Strickland</u>, 466 U.S. at 690; <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983) (*per curiam*) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." (citations omitted)).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have

done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  <u>Ward v. Hall</u>, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing <u>Waters</u>, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  <u>Strickland</u>, 466 U.S. at 697; <u>see</u> <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of <u>Strickland</u>, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989).

16

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."   Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (explaining appellate counsel not required to raise every non-frivolous issue).  Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'"  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).  Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review.  Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264.  Prejudice turns on whether "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner."  Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable").  "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."  Bell, 535 U.S. at 699.  "In short, an *unreasonable* application

of federal law is different from an *incorrect* application of federal law." <u>Barwick v. Sec'y,</u> <u>Fla. Dep't of Corr.</u>, 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." <u>Richter</u>, 562 U.S. at 105 (quotation marks and citations omitted); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 578 U.S.-, 136 S. Ct. 1149, 1151 (U.S. 2016) (*per curiam*) (internal quotations and citations omitted). To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> Put another way, "[t]he <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial." <u>Richter</u>, 562 U.S. at 105; <u>see also</u> <u>Sexton v.</u> <u>Beaudreaux</u>, 584 U.S.-, 138 S. Ct. 2555, 2560 (U.S. 2018) ("[B]ecause the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); <u>Woods</u>, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

The purpose of the review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is

possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"

<u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).  That is, <u>Strickland</u>

requires application of a totality-of-the-circumstances standard because "[n]o particular set of

detailed rules for counsel's conduct can satisfactorily take account of the variety of

circumstances faced by defense counsel or the range of legitimate decisions regarding how

best to represent a criminal defendant.  <u>Khan v. United States</u>, 928 F.3d 1264, 1273 (11th Cir.)

(citation omitted), *cert. dismissed*, 140 S. Ct. 339 (U.S. Nov. 5, 2019).  As recently emphasized

by the Eleventh Circuit:

> [D]eferential review under <u>Strickland</u> does not ask whether counsel could
> possibly or ideally have been more effective.  "The test for ineffectiveness is not
> whether counsel could have done more."  We do not ask whether an attorney's
> representation "deviated from best practices or common custom," and we should
> resist the temptation to second-guess an attorney with the benefit of our
> hindsight.  Rather, <u>Strickland</u> asks only "whether, in light of all the
> circumstances, the identified acts or omissions were outside the range of
> professionally competent assistance."

<u>Jenkins v. Comm'r, Ala. Dep't of Corr.</u>, 963 F.3d 1248, 1269-70 (11th Cir. 2020) (internal

citations omitted).

### 2. The Georgia Supreme Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claim in Ground Four Was Not Objectively Unreasonable

In Ground Four, Petitioner argues trial counsel provided ineffective assistance by

moving for a mistrial during voir dire, instead of asserting a "challenge to the poll" to seek a

new jury panel, after the prosecutor posed two improper lines of questioning to the prospective

jurors.  The Georgia Supreme Court found this claim lacked merit under <u>Strickland</u> because

Petitioner failed to show prejudice from Mr. Johnson's incorrect terminology.  Petitioner fails to show the state court's conclusion was an unreasonable application of Strickland.

> O.C.G.A. § 15-12-133 provides:
>
> . . . [C]ounsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action . . . .

The trial court has discretion in determining which questions may be posed to prospective jurors.  Thomas v. State,769 S.E.2d 82, 87 (Ga. 2015).

Georgia law provides a "challenge to the poll," not a motion for mistrial, is the proper procedural vehicle in Georgia to request a new panel from which to pick a jury.  See Sharpe v. State, 531 S.E.2d 84, 88 (Ga. 2000) ("The time for making a motion for mistrial is not ripe until the case has begun, and the trial does not begin until the jury has been impaneled and sworn." (citation omitted)).  Nevertheless, when the "clear import" of a motion is to dismiss the jury panel and conduct voir dire with a new panel, use of improper terminology may be disregarded.  Herrington, 794 S.E.2d at 150 (citing Sharpe, 531 S.E.2d at 88.)  As the import of Mr. Johnson's motion for mistrial during voir dire was clear based on his objection to the two challenged lines of questioning, and the motion was denied on the merits, the Georgia Supreme Court reasonably concluded no prejudice inured to Petitioner.  Id.  The record amply supports this conclusion.

Petitioner alleges the State improperly asked prospective jurors about culpability for a party to a crime and whether they heard about the circumstances of the charged crime.  (See

doc. no. 6-6, pp. 13-19.)  Defense counsel objected when the prosecutor asked prospective

jurors whether they believed it was fair to hold a party to a crime equally responsible for the

crime, arguing the question required prejudging the case.  (<u>Id.</u>)  By directing the prosecutor to

move on before any prospective juror answered, the trial judge effectively sustained the

objection.  (<u>Id.</u> at 19.)

The prosecutor also asked if any of the prospective jurors heard about the murder with

which Petitioner had been charged and began to outline the circumstances of the alleged crime.

(<u>Id.</u> at 19-21.)  When defense counsel objected on the basis the prosecutor was presenting the

information as established fact, the trial judge immediately cautioned nothing the attorneys say

or argue constitutes evidence.  (<u>Id.</u> at 20.)  As the Supreme Court concluded, Petitioner failed

to show anything about the voir dire questioning was inherently prejudicial or denied Petitioner

the right to a fair trial, and there was no abuse of discretion by the trial judge in refusing to

strike the jury panel and restart voir dire with a new panel.  <u>See</u> <u>Herrington</u>, 794 S.E.2d at 149-

50 (citing <u>Kinder v. State</u>, 663 S.E.2d 711, 713 (Ga. 2008)).  As there was no merit to the clear

import of Mr. Johnson's objection to the State's questions during voir dire, even if Mr. Johnson

had used the correct terminology, there can be no prejudice as is required for a meritorious

ineffective assistance claim under <u>Strickland</u>.

Petitioner presents nothing demonstrating there was an error in the state decision about

the ineffective assistance claim in Ground Four that was "well understood and comprehended

in existing law beyond any possibility for fairminded disagreement."  <u>Woods</u>, 136 S. Ct. at

1151.  Nor has Petitioner has presented any evidence—much less clear and convincing

evidence—to rebut the presumptive correctness of the Georgia Supreme Court's factual

determinations upon which it based its <u>Strickland</u> analysis.  Petitioner's conclusory argument to the contrary is woefully inadequate to establish that the state court unreasonably applied <u>Strickland</u> or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, Petitioner is not entitled to federal habeas relief in connection with his claim in Ground Four.

> **3.    The State Habeas Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claims in Grounds Five, Six, Seven, and Eight Was Not Objectively Unreasonable**

As explained in detail below, Petitioner raises four separate ineffective assistance of appellate counsel claims, all of which were rejected by the state habeas court.  The Georgia Supreme Court denied the request for a CPC in a two-sentence order:  "Upon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby denied.  All the Justices concur."  (Doc. no. 6-3.)  Because the state supreme court decision did not come accompanied with reasons, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable.  <u>Wilson v. Sellers</u>, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018).  The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  <u>Tharpe</u>, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court reasoning, as it is the last state court to decide Petitioner's federal ineffective assistance of appellate counsel claims in a reasoned opinion.  See Wilson, 138 S. Ct. at 1192.  As discussed below, the state habeas court correctly identified and applied the Strickland analysis to determine Petitioner did not show counsel's performance was objectively unreasonable or that he was prejudiced by counsel's performance.  (See doc. no. 6-2.)

> **a.      The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Five Was Not Objectively Unreasonable**

In Ground Five, Petitioner argues he received ineffective assistance from Mr. Jones because he failed to argue the indictment violated Petitioner's Fifth and Fourteenth Amendment rights by failing to identify a predicate offense for felony murder.  The state habeas court found this claim lacked merit under Strickland, concluding Petitioner had not shown Mr. Jones erred in failing to raise the issue because there was no showing the claim had a reasonable likelihood of success on appeal.  (Doc. no. 6-2, pp. 6-7, 14-15.)

> **i.      Background**

Mr. Jones graduated from the University of Georgia School of Law in 2010, and was admitted to the Georgia Bar in 2011.  (Doc. no. 6-4, p. 14.)  He worked in the appellate division of the Georgia Public Defenders Council when assigned to Petitioner's case from the motion for new trial stage through the direct appeal.  (Id. at 14-15.)  Mr. Jones testified he reviewed the trial transcript, prepared a detail amended motion for new trial, spoke with Mr. Johnson, and spoke numerous times with Petitioner about the appeal.  (Id. at 17-18.)  Mr. Jones raised

every issue he thought had merit and the best chance to lead to reversal of Petitioner's conviction.  (Id. at 21-22.)

### ii.   Analysis

Petitioner alleges Mr. Jones should have challenged the indictment as violative of Petitioner's Fifth and Fourteenth Amendment rights because it did not identify a predicate offense for felony murder.  The state habeas court determined Petitioner did not satisfy the Strickland standard after concluding there was no merit to the substance of the underlying claim and Mr. Jones had raised the issues he believed had the best chance of success on appeal. (Doc. no. 6-2, pp. 6-7, 14-15.)  Petitioner presents nothing demonstrating there was an error in the state habeas decision about the ineffective assistance claim that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Woods, 136 S. Ct. at 1151.

Count Two of the indictment, the felony murder count of which Petitioner was convicted, charged Petitioner and others with murder on August 24, 2006, alleging the defendants "did while in the commission of the felony of Aggravated Assault, cause the death of Curtis Tony Howard, a human being, by shooting him . . . ."  (Doc. no. 6-2, p. 144.)  The malice murder charge in Count One, of which Petitioner was found not guilty, also charged the death of Mr. Howard was caused "by shooting."  (Id. at 143.)  Petitioner has not shown appellate counsel was ineffective for failing to argue the indictment did not identify a predicate offense for felony murder because there was no stand-alone aggravated assault count.

First, a special demurrer seeking greater specificity with regard to the predicate felony must be made prior to pleading not guilty, and the failure to do so waives the right to proceed

on a perfect indictment.  See Stinson v. State, 611 S.E.2d 52, 54 (Ga. 2005).  No such timely challenge was filed in the trial court.  Second, the indictment was sufficient under Georgia law because it alleged in both the malice and felony murder counts that the aggravated assault was committed by shooting the victim.  See Scott v. State, 576 S.E.2d 860, 861-62 (Ga. 2003) (finding indictment sufficient to put defendant on notice of accusation of causing victim's death by committing aggravated assault where indictment alleged death caused "by choking and strangling"); see also Kimbrough v. State, 799 S.E.2d 229, 233 (Ga. 2017) ("[W]e have held that an indictment not only must state the essential elements of the offense charged, but it also must allege the underlying facts with enough detail to 'sufficiently apprise[] the defendant of what he must be prepared to meet.") (citations omitted)).  As Petitioner's indictment charged in two separate places that Petitioner and his co-defendants caused the victim's death "by shooting," he was sufficiently on notice that he was accused of causing the death of the victim by shooting.  Third, applying a general test of sufficiency of an indictment in Georgia, Petitioner could not admit the allegations in the indictment and be found not guilty of a crime, thereby undermining any claim of a void indictment.  See Smith v. Hardrick, 464 S.E.2d 198, 200 (Ga. 1995).  There can be no prejudice from failing to raise a meritless claim. See Nyhuis, 211 F.3d at 1344.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  This claim provides no basis for federal habeas corpus relief.

> **b.** **The State Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claim in Ground Six Was Not Objectively Unreasonable**

In Ground Six, Petitioner argues Mr. Jones provided ineffective assistance by not arguing Petitioner's Sixth Amendment right to cross examine witnesses had been violated with respect to evidence and testimony of GBI SA Doug Parker.  The state habeas court found this claim lacked merit, concluding (1) the trial court had not erred in prohibiting the disputed cross-examination about a witness's prior testimony; and (2) there was no showing the claim had a reasonable likelihood of success on appeal based on appellate counsel's determination he could not establish prejudice.  (Doc. no. 6-2, pp. 9-10.)

> **i.** **Background**

SA Parker testified at both a <u>Jackson v. Denno</u>[5] hearing and at trial, and Mr. Johnson cross-examined SA Parker both times.  (Doc. no. 6-6, pp. 34-47; doc. no. 6-9, pp. 6-41.)  At trial, SA Parker testified concerning his interview with Petitioner and his investigation of the case.  When Mr. Johnson attempted to cross-examine SA Parker about his interview of prior trial witness Cherika Wright, and introduce the testimony as a prior inconsistent statement of Ms. Wright, the prosecutor objected because Mr. Johnson had not previously asked Ms. Wright about the content and extent of her statements to SA Parker.  (Doc. no. 6-9, pp. 23-41.)  In particular, during her prior testimony, Ms. Wright testified she drove Petitioner home from the scene of the crime and Petitioner possessed a purse at that time.  (Doc. no. 6-7, pp. 132-54.)

---

[5]378 U.S. 368 (1964).

During his cross-examination of Ms. Wright, Mr. Johnson verified she had "probably" told law enforcement about the purse, but she did not identify a particular law enforcement officer to whom she had given the statement.  (Id. at 153.)  Mr. Johnson wanted to ask SA Parker whether Ms. Wright told him anything about a purse to support his argument the State improperly withheld evidence because SA Parker's report did not mention Ms. Wright reporting Petitioner's possession of a purse.  (Doc. no. 6-9, p. 25.)

To resolve the objection, the trial judge allowed counsel to question SA Parker outside the presence of jury, and he testified he had not learned about Ms. Wright's statement concerning the purse until the beginning of trial.  (Id. at 34.)  The trial judge ruled Mr. Johnson could not question SA Parker in front of the jury about the purse because SA Parker's lack of knowledge about the purse would call into question Ms. Wright's credibility without giving her a chance to explain any inferred inconsistency that she had reported the purse to law enforcement but SA Parker's report did not reflect any such statement.  (Id. at 40-41.)  Ms. Wright had been excused after her testimony and not available to be recalled for additional testimony.[6]  (Id. at 35.)

Mr. Johnson explained he did not cross-examine Ms. Wright about her testimony concerning Petitioner's possession of a purse because he did not know what else she knew about the purse.  He did not want to pursue a line of questioning concerning incriminating testimony about which he was previously unaware, particularly when the defense was that

---

[6]Mr. Johnson's treatment of Ms. Wright is addressed in detail in Part III(C)(3)(d) as part of Petitioner's Ground Eight claim of ineffective assistance.

Petitioner was not an active participant in the criminal activity leading to the murder and only became involved by assisting in concealing or disposing of the body.  (Doc. no. 6-5, pp. 12-13, 19; doc. no. 6-9, p. 29.)  In fact, Mr. Johnson testified the first he heard Ms. Wright mention Petitioner having a purse was at trial, despite having interviewed her prior to trial.  (Doc. no. 6-5, p. 31.)

Specific to the current ineffective assistance of appellate counsel claim, Mr. Jones testified at the state habeas hearing he did not raise the trial court's refusal to allow cross-examination of SA Parker on the issue of Ms. Wright's statement concerning the purse because it "was ancillary to the issue of whether he was present and a participant in the robbery."  (Doc. no. 6-4, p. 20.)  In particular, because Ms. Wright arrived after the murder when a decision had been made to dispose of the body, and her testimony was not connected to the murder itself, Mr. Jones did not believe he could establish prejudice from the trial judge's denial of cross-examination of SA Parker about Ms. Wright's statement concerning the purse.  (Id. at 37-38.)

### ii.    Analysis

Petitioner alleges Mr. Jones should have raised a Sixth Amendment challenge to the trial court ruling that limited the cross examination of SA Parker regarding Ms. Wright's statement about Petitioner possessing a purse after the murder.  The state habeas court determined Petitioner did not satisfy the Strickland standard because there was no merit to the substance of the underlying claim and Mr. Jones validly concluded he could not establish prejudice from the trial court's ruling.  (Doc. no. 6-2, pp. 9-10.)  Petitioner presents nothing demonstrating there was an error in the state habeas decision about the ineffective assistance

claim that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods, 136 S. Ct. at 1151.

"[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (citation omitted). The trial judge retains "wide latitude" to impose reasonable limits on cross-examination. Id.; see also Watkins v. State, 581 S.E.2d 23, 27-28 (Ga. 2003). Courts examine numerous factors when determining whether a defendant was prejudiced by limits imposed on cross-examination, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684; see also Knox v. State, 658 S.E.2d 819, 824 (Ga. App. 2008). The proponent of cross-examination must lay a proper foundation for a prior inconsistent statement so a witness has "an opportunity to admit, explain, or deny the prior contradictory statement." Duckworth v. State, 492 S.E.2d 201, 202 (Ga. 1997).

Here, when Ms. Wright testified, Mr. Johnson did not pursue what he believed could be incriminating testimony because he did not have any prior information about a potential statement to an unidentified law enforcement officer about Petitioner's possession of a purse. When SA Parker testified about his investigation of the case and interviews with witnesses, it became apparent Ms. Wright's testimony at trial did not match the content of SA Parker's

report.  However, Ms. Wright had not been given the opportunity to explain any potential

inconsistency between her testimony and the lack of information in SA Parker's report about

the purse.  For example, she had not been given the opportunity to explain what statement she

gave about the purse or identify to which law enforcement official she may have spoken.  As

she had been excused as a witness, there was no opportunity to revisit her testimony.

In any event, the theory of the defense was that Petitioner's only active participation

was after the murder when he attempted to, or did, assist in concealing or disposing of the

body.  (Doc. no. 6-5, p. 32.)  Thus, appellate counsel found Ms. Wright's testimony ancillary

to the key issue and could not identify any necessary prejudice to justify challenging the trial

court's ruling.  There can be no prejudice from failing to raise a meritless claim.  See Nyhuis,

211 F.3d at 1344.  The state court's decision to reject this claim was not an unreasonable

application of Strickland or based on an unreasonable determination of the facts in light of the

evidence presented.  Ground Six provides a basis for federal habeas corpus relief.

### c.   The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Seven Was Not Objectively Unreasonable

In Ground Seven, Petitioner argues Mr. Jones provided ineffective assistance by not

raising an ineffective assistance claim against Mr. Johnson based on his failure to file a timely

witness list.  The state habeas court found this claim lacked merit, concluding Mr. Jones made

a reasonable tactical decision not to pursue a claim related to the witness list and Petitioner

failed to show prejudice from not having these two witnesses testify.  (Doc. no. 6-2, pp. 10-

12.)

### i.        Background

Mr. Johnson graduated from Mercer Law School and had been a licensed attorney since 1983.  (Doc. no. 6-5, p. 4.)  Mr. Johnson followed his standard practice for every trial of reviewing the discovery provided by the State, interviewing witnesses, and discussing the case with Petitioner.  (Id. at 23, 31.)  Specific to the issue of a witness list, the record reflects on the second day of trial, Mr. Johnson passed the prosecutor a piece of paper with the names, birthdates, and phone numbers of two witnesses he wanted to call, as well as a social security number for one of the two.  (Doc. no. 6-7, pp. 155-56.)  The State objected to the mid-trial disclosure and asked the trial court to exclude the witnesses.  (Id. at 156-58.)  Mr. Johnson explained the two witnesses were intended to rebut testimony from Michael Fields that he had not given Petitioner a ride to the scene of the crime, and Mr. Johnson did not realize Mr. Fields's testimony concerning the ride would be an issue until Mr. Fields denied giving the ride during his trial testimony.  (Id. at 159-60; doc. no. 6-8, pp. 1-2.)  Mr. Johnson eventually conceded he knew the information came too late, and in light of the State's lack of resources to contact the proposed new witnesses in the middle of trial, the trial judge excluded the witnesses.  (Doc. no. 6-8, pp. 4-5.)

At the state habeas hearing, Mr. Johnson again explained he attempted to call these two witnesses as a possible way to rebut the testimony of Mr. Fields.  (Doc. no. 6-5, pp. 26-27.)  Mr. Johnson could not remember if he ever talked to these witness to see if they actually could provide testimony to impeach Mr. Fields's testimony, but he did profess continuing confusion about why Petitioner never mentioned these witnesses prior to trial despite all the time Mr.

Johnson spent with Petitioner preparing for trial.  (<u>Id.</u> at 27.)  Mr. Johnson had no opinion whether any information from these witnesses would have affected the outcome of the trial. (<u>Id.</u> at 29.)  Petitioner did not offer any evidence at the hearing about the new, potential witnesses, including who they were or what information they may have had to dispute the testimony of Michael Fields about giving Petitioner a ride to the scene of the murder.  Nor did Petitioner dispute he was at the scene of the crime.

### ii.        Analysis

Petitioner argues Mr. Jones provided ineffective assistance by not raising Mr. Johnson's belated, mid-trial disclosure of two witnesses who may have been able to impeach Mr. Fields's testimony about giving Petitioner a ride to the murder scene.  The state habeas court determined Petitioner had not shown prejudice from Mr. Jones's strategic decision to forego an ineffective assistance claim on this issue when picking the appellate arguments he thought had the best chance of success.  (Doc. no. 6-2, p. 12.)  Petitioner presents nothing demonstrating there was an error in the state habeas decision about the ineffective assistance claim that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  <u>Woods</u>, 136 S. Ct. at 1151.

Because Petitioner is challenging a state court ruling that rests on findings of fact, he must clear two hurdles:  (1) rebut the presumption of correctness that attaches to the findings of fact by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1); and (2) overcome the deference owed to the state court's legal decision under § 2254(d).  <u>Whatley v. Warden, Ga. Diagnostic & Classification Ctr.</u>, 927 F.3d 1150, 1175 (11th Cir. 2019).  Because Petitioner

raises his challenge as an ineffective assistance of appellate counsel claim, there must be a showing of merit to an underlying ineffective assistance of trial counsel claim for not timely submitting a witness list containing the two, new potential witnesses.  See Payne v. Allen, 539 F.3d 1297, 1314-15 (11th Cir. 2008).  Absent a showing of deficient performance, there can be no valid ineffective assistance claim under Strickland.

Petitioner points to no evidence in the record supporting a conclusion Mr. Jones would have had a valid ineffective assistance of trial counsel claim to raise on this point.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."  Strickland, 466 U.S. at 691.  Petitioner maintains he told Mr. Johnson about the two witnesses before trial, but Mr. Johnson testified at the state habeas hearing it was mid-trial, after Mr. Fields testified.  Thus, as the state habeas court recognized, when deciding what issues to raise on appeal, Mr. Jones had conflicting information from Petitioner and Mr. Johnson, thereby undermining an argument of deficient performance.

Moreover, at the state habeas hearing, Petitioner failed to produce any evidence about what testimony the new witnesses would have provided or how his case had been prejudiced by the absence of such testimony, particularly since he did not dispute he was present at the scene of the murder.  Petitioner had the burden of proof on his claims and to complete the habeas record with the relevant information from trial.  Holt v. Ebinger, 814 S.E.2d 298, 301 (Ga. 2018) ("[A] silent or ambiguous record is not enough to carry the petitioner's burden to

prove ineffective assistance of counsel." (citations omitted)).  Nor has Petitioner provided any information in these proceedings about what testimony the excluded witnesses could have provided such that the state court's factual determination on this point could be disregarded. In light of the lack of information about the testimony of the witnesses would have provided, he has not shown prejudice at his trial by Mr. Johnson's representation or prejudice to his appeal from Mr. Jones strategically choosing not to raise ineffective assistance of trial counsel claim on this point.  Stated otherwise, Petitioner has not established "the neglected claim would have a reasonable probability of success on appeal."  Philmore, 575 F.3d at 1265 (citation omitted).

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Ground Seven provides no basis for federal habeas corpus relief.

> **d.   The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Eight Was Not Objectively Unreasonable**

In Ground Eight, Petitioner argues Mr. Jones provided ineffective assistance by not raising Mr. Johnson's failure to impeach State witness Cherika Wright concerning her conflicting statements about Petitioner having a purse with him on the day of the murder, or alternatively, his failure to hold Ms. Wright for rebuttal.  The state habeas court found this claim lacked merit because (1) Mr. Johnson made a strategic decision not to further pursue questioning about the purse because he did not know what other potentially damaging information Ms. Wright might provide concerning the purse; and (2) Mr. Jones was not ineffective for deciding Ms. Wright's testimony was ancillary to the main issue of Petitioner's

presence and participation in the criminal activity alleged because she arrived on the scene after the murder and had no testimony to offer directly connected to the murder.  (Doc. no. 6-2, pp. 12-14.)

### i.      Background

At trial, Ms. Wright, the former girlfriend of Mr. Fields, testified on the morning of the murder, she had gone to a doctor's appointment and returned to the residence where the murder occurred, her home, at approximately twenty minutes after noon.  (Doc. no. 6-7, pp. 134-35.) Upon her return, she saw Petitioner, Mike Thomas, and Mike Jones in the backyard having "maybe like a little heated argument or something."  (Id. at 137-38.)  Ms. Wright took her son into the house and went back outside to retrieve her purse and diaper bag from the truck she had been driving, which belonged to Mr. Fields.  (Id. at 141, 143.)  Mr. Fields tried to push Ms. Wright back in the house and demanded his keys from her.  (Id. at 144.)  Ms. Wright observed Mr. Fields leave in his truck, following a gold truck.  (Id. at 146.)  She attempted to follow the trucks for "two or three minutes" in her own vehicle, but returned to the residence and found Petitioner on her porch.  (Id. at 147-48, 152.)

Petitioner asked Ms. Wright for a ride to town.  (Id. at 149.)  Ms. Wright agreed, and when they left the residence, she saw Petitioner with a book bag and a Louis Vuitton purse. (Id. at 150.)  On cross-examination, Mr. Johnson asked if Ms. Wright had reported to police Petitioner had a purse with him when they left the residence, and she responded, "I don't know. I probably did."  (Id. at 153.)  When asked if she had previously testified about the purse, she said she had never been asked anything about Petitioner.  (Id.)  No other questions were asked about the purse.

As discussed in detail in Part III(C)(3)(b), Mr. Johnson had no information prior to trial about Petitioner having a purse with him when Ms. Wright provided Petitioner with a ride after the murder, even though he had interviewed her prior to trial.  When caught off guard by the testimony, Petitioner did not want to pursue a line of questioning about potentially incriminating testimony when he did not know where the questioning would lead.  Mr. Johnson strategically chose to let the issue pass "with as little fanfare and as little notice as possible." (Doc. no. 6-9, pp. 29, 39.)

### ii.    Analysis

The state habeas court determined Petitioner had not shown prejudice from Mr. Jones's strategic decision to not include an ineffective assistance claim on this issue when picking the appellate arguments he thought had the best chance of success.  (Doc. no. 6-2, p. 14.)  Petitioner presents nothing demonstrating there was an error in the state habeas decision about the ineffective assistance claim that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Woods, 136 S. Ct. at 1151.

Mr. Jones testified he did not choose to include an ineffective assistance claim based on the treatment of Ms. Wright's testimony because it was ancillary to whether Petitioner was present and actively participating in the events of the murder.  (Doc. no. 6-4, pp. 36-37.)  Ms. Wright testified she had arrived on the scene after the murder and after the decision had already been made to dispose of the body.  Ms. Wright was not confident that she had told law enforcement about seeing the purse, let alone did she identify who in law enforcement she may have told.  (Doc. no. 6-7, p. 153 ("I don't know.  I probably did.")).  Petitioner has not shown

the strategic choice by Mr. Johnson at trial to let pass with little fanfare potentially incriminating testimony that was tangential to the crux of the "after-the-fact participant" defense was deficient or prejudicial such that Mr. Jones's strategic decision not to raise the issue on appeal was ineffective assistance.  See Provenzano, 148 F.3d at 1332 ("[S]trategic choices are 'virtually unchallengeable.'")  Stated otherwise, Petitioner has not established "the neglected claim would have a reasonable probability of success on appeal."  Philmore, 575 F.3d at 1265 (citation omitted).

Petitioner may be attempting to tie this claim to his claim in Ground Six concerning a limitation on the ability to cross-examine GBI SA Parker about what Ms. Wright may have told him about a purse during his investigation.  As the Court explained above in Part III(C)(3)(b), the state court reasonably determined Petitioner had not established any prejudice from the parameters of cross-examination for SA Parker.  Putting a different label on the claim does not change the underlying analysis that Petitioner has not shown (1) counsel made unreasonable strategic decisions how to treat the potentially troublesome testimony; or (2) the outcome of the trial or appeal would have changed based on the treatment of testimony from a witness who arrived after the murder and had no information to offer about Petitioner's participation in or attempted concealment thereof.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Ground Eight provides no basis for federal habeas corpus relief.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the

§ 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

      SO REPORTED and RECOMMENDED this 3rd day of December, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA